## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MENDEZ,<br><br>        Petitioner,<br><br>        v.<br><br>MATTHEW CATE,<br><br>        Respondent. | Case No.: 1:11-cv-02154-LJO-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 2)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections and Rehabilitation serving an indeterminate sentence of 25 years-to-life pursuant.  This sentence was imposed by the Superior Court of California, County of Kings in 2006 following a jury conviction for battery with infliction of serious bodily injury on a fellow inmate.  (Doc. 15, Ex. A). The jury also found that Petitioner had suffered five prior "serious" or "violent" felonies that qualified as strikes under California's "Three Strikes" law (Cal. Pen. Code §§ 667(d) & (e)).  (Id.).)

Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), contending, inter alia, that the trial court erred in failing to conduct a hearing

regarding Petitioner's request to have trial counsel removed and another attorney appointed. (Id.). The 5th DCA agreed, reversed the judgment, and remanded the case to the trial court to conduct a hearing on that issue. (Id.). The trial court held the hearing and denied Petitioner's motion. (Id.). On March 4, 2011, following a second appeal, the 5th DCA, in an unpublished decision, affirmed the judgment and conviction. (Id.). Petitioner subsequently filed a petition for review in the California Supreme Court, which was denied on May 11, 2011. (Lodged Document ("LD") 10).

On December 29, 2011, Petitioner filed the instant petition. (Doc. 2). Respondent's answer was filed on April 4, 2012. (Doc. 15). On May 30, 2012, Petitioner filed his Traverse. (Doc. 23). On February 28, 2013, Respondent filed sealed transcripts of the Marsden hearing. (Doc. 25).

Respondent does not contend than any of the grounds for relief in the petition have not been fully exhausted.

## FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

> On March 27, 2003, correctional sergeant Mathew Juarez let cellmates Mendez and Anthony Perez out of their cell to make phone calls and, minutes later, let inmate Reuben Herrera out of his cell to attend a Board of Prison Terms hearing. Mendez and Perez ran toward Herrera and, after Perez punched Herrera in the face, Herrera's knees buckled. Juarez activated his alarm, gave all inmates orders to get down, and positioned himself to utilize force. Mendez and Perez both repeatedly punched Herrera in the face with closed fists. Juarez twice ordered Mendez and Perez to stop fighting. Neither one obeyed him.
>
> Juarez fired a .40 millimeter "less lethal" projectile at Perez's lower extremities. Mendez and Perez each took about 10 steps backward, lay down on their stomachs with their arms out, and made barking noises. Herrera slid down the wall, lay motionless on his back, and died. He suffered blunt force trauma behind the left ear causing a skull fracture and a brain injury and blunt force trauma to the left eye likewise causing a skull fracture and a brain injury. Each was capable of causing death. The more severe injury, the fracture behind the left ear, could have been caused by the projectile from Juarez's weapon, but the less severe injury, the trauma to the left eye, could not. Additionally, he suffered multiple non-life-threatening head injuries consistent with infliction of multiple blows to the head.

(Doc. 15, Exh. A).

///

///

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

**DISCUSSION**

I.      Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he can show that the state court's adjudication of his claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

 28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. 326, 405-406 (2000).

3

A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Id., quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*).

Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409). In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. If fairminded jurists could so disagree, habeas relief is precluded. Richter, 131 S.Ct. at 786. As the United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme malfunctions in the state criminal justice systems,'" and not as a means of error correction. Richter, 131 S.Ct. at 786, quoting Jackson v. Virginia, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens, J., concurring in judgment). The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Richter, 131 S.Ct. at 787-788. Put another way, a state court's determination that a claim lacks merit bars federal habeas relief so long as "fairminded jurists could disagree" on the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S.Ct. at 1398 ("This backward-looking

4

language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at the same time–i.e., the record before the state court.")

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. at 340. Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis,

223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v. Morgan, 313 F.3d at 1167.

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

**III.  Review of Petitioner's Claims.**

The instant petition itself alleges the following as grounds for relief: (1) Petitioner was denied the effective assistance of trial counsel; and (2) Petitioner was deprived of the opportunity to present an adequate defense.

A. Ineffective Assistance of Trial Counsel

Petitioner first contends that his trial counsel was ineffective, in contravention of his Sixth Amendment rights.  This contention is without merit.

1. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

> Mendez argues that the court erred by denying relief at his Marsden hearing. The Attorney General argues the contrary.

6

On remand, the court held a <u>Marsden</u> hearing on October 3, 2008. The first issue, Mendez informed the court, was his trial attorney's "inability to communicate with [him] throughout her representation." He told her that Juarez's testimony at his trial about how the prison was on "normal program with no restrictions" when he let Mendez and Perez out of their cell was a lie. He said that on the day before the incident the institution let "one Bulldog and one rival gang member" out of their cells in the building where he was housed "to see if the Bulldogs could get along with the rival gang members" but "an altercation occurred" as soon as the two gang members "got within reach of each other." He said that he gave his trial attorney the names of the people involved but "she refused to investigate and to present it as evidence in [his] trial."

"What's the point of it?," the court asked. "The point," Mendez said, "is just basically to show why CDCR and Mr. Juarez lied and fabricated the reports as to what really happened." The court inquired, "How is this a defense to you stabbing somebody?" He replied that he was supporting his claim that he "was denied adequate representation." At the preliminary hearing, he added, Juarez testified Bulldogs and Southern Hispanics "could not" be in the same room together without killing each other or assaulting each other. "In order to prevent himself from getting in trouble," he said, Juarez "lied about what happened" by saying "it was normal program."

Mendez said Juarez took home "the expended round that ultimately killed Mr. Herrera," hired a lawyer before giving his statement to the district attorney's office, and brought back the expended round only when asked, with the excuse that "he didn't want any inmate to try to fish it [out of] a cell," but the problem with his testimony is that the scene had already been secured. Juarez took the expended round home to "continue to fabricate his report," he said, to "suggest that Mr. Herrera's head injuries were caused" by him and Perez.

Another "attempt by CDCR to lie" was an incident report stating that "two members of a disruptive group, Fresno Bulldogs, murdered Inmate Herrera, a Southern Hispanic, by bludgeoning him in the head with a sock-type weapon, two batteries in a sock," but that was a "lie" that "creates another credibility issue," Mendez informed the court. His "other issue" was that an inmate by the name of Hervey, who "stated that it was a one-on-one fight" between Herrera and Perez, was subpoenaed but never testified. A recording of Hervey's phone call "clearly shows" that "the whole incident only took 11 seconds." In that light, he argued, the prosecutor's theory was "[p]hysically impossible" that he came down from the top tier where "these witnesses all testified that [he] was" and "beat this guy within 11 seconds."

Asked by the court, "What other witnesses did you want called?," he said two inmates by the name of Delgado and Lopez characterized the fight as "a one-on-one" in which he "was never involved." Those three inmates, "if called" as witnesses, "would have confirmed" the testimony of a CDCR counselor by the name of Braxmeyer "that she never saw [him] hit or touch Mr. Herrera in any way." He emphasized that "it's not by coincidence that four people say the same thing, but yet not one of them [was] ever called on my behalf." Investigators "tested for blood" and "bagged [his] hands to see if there was [sic] any marks," he said, but "there was nothing, no physical evidence whatsoever."

Mendez noted, too, that the pathologist's report gave Herrera's cause of death as possibly "feet punching" or "40 millimeter fire and a fist, or something of that sort," but lacked "an opinion as to what exactly happened." He referred to, and the court admitted, photographs showing that Herrera "was bleeding" when called "to come to the door and cuff up" and that "his handprints were sliding through all his blood" but "none of these were [sic] ever brought in."

Granting the request of Mendez's trial attorney, the court continued the <u>Marsden</u> hearing to October 30, 2008. Summarizing the evidence, his trial attorney noted Mendez and Perez were on the top tier, and Herrera and Hervey were on the bottom tier, of a two-tier housing unit.

Two wounds, one from the projectile Juarez fired, the other from a blow to the head, were fatal. She made a "tactical decision" not to "get into the politics" of the Bulldogs and the Southerners who felt "a duty to attack each other" on sight since that was evidence of a motive for the beating but not of a defense to the crime.

The recording of Hervey's phone call showed "the gunner did not intentionally let the defendants out of their cells. It was an oversight," Mendez's trial attorney said. "You could hear the gunner saying, 'What are those guys doing out of their cell?'" At the end of the altercation were sounds of "Bulldogs barking." The "gang connotations" of the evidence were "highly prejudicial," she said.

Mendez's trial attorney informed the court that she considered the recording of Hervey's phone call irrelevant and chose not to call him as a witness because he "never wanted to watch," intentionally turned his back once the fight started, and "didn't see the whole thing." She chose not to call Delgado as a witness since his statements-he was asleep during the fight, he saw Mendez and Herrera fighting, Mendez just watched Perez and Herrera fighting, and Bulldogs are required to attack Southerners-were inconsistent and not helpful to the defense. She likewise chose not to call Lopez as a witness since his statements-he saw only the end of the fight but needs glasses and can "barely see," he was asleep until he heard a gunshot, he saw Mendez go downstairs to help out, and he saw Mendez and Perez "ganging on him"-were inconsistent and not helpful to the defense.

In rebuttal, Mendez disputed his trial attorney's characterization of Bulldog politics. "Bulldog gang members are not required or forced to do anything," he insisted. He reiterated the importance of the recording of Hervey's phone call in establishing a timeline. He said Delgado claimed he was asleep only because an inmate "can't really be talking to the cops" or he "can be in trouble." He said Lopez never claimed he saw him hit Herrera despite the inconsistencies in his statements. He acknowledged letting "two rival gang members out at one time" was "clearly wrong." He emphasized the lack of physical evidence connecting him to the beating. Despite the inconsistencies in their statements, Hervey, Delgado, Lopez, and Braxmeyer "all come to the same main point," he said, that "they didn't see me hit the individual."

Additionally, Mendez complained that his trial attorney "didn't look into" the "list of other witnesses" he gave her, one of whom was Herrera's cellmate, an inmate by the name of Gonzales. In reply, she noted that she requested an interview from each inmate in the housing unit, that interviews are possible only with an inmate's consent, and that the defense interviewed every inmate who consented. She characterized Gonzales as "a great prosecution witness" who "would have been devastating to the defense." On the basis of her interviews of at least five other witnesses "brought here the day of trial," she found each "detrimental" to the defense. The court continued the matter for research before ruling.

On November 13, 2008, the court made findings and ruled on Mendez's <u>Marsden</u> motion. The court found there was "no apparent prejudice not impeaching Juarez as to whether it was a normal program or not. As to witnesses Hervey, Delgado, Lopez, and Gonzales, it appears that [his trial attorney] certainly had reasonable tactical reasons for not calling each of those witnesses." The court found the claim of failure to investigate "clearly not true. Investigators were hired and interviews of witnesses done." The court characterized the claim of failure to communicate "conclusionary," found no "colorable claim of ineffective assistance of counsel" and no "valid motion for a new trial" on that ground, and denied relief.

A <u>Marsden</u> hearing is not a full-blown adversarial proceeding but instead is an informal hearing in which the court ascertains the nature of a defendant's allegations of defects in counsel's representation and decides whether the allegations have sufficient substance to warrant counsel's replacement. (<u>People v. Gutierrez</u> (2009) 45 Cal.4th 789, 803.) Only if the

> record "clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result" does the court have the duty to grant a Marsden motion. (People v. Smith (2003) 30 Cal.4th 581, 604.) Only if "the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel" can the reviewing court find the abuse of discretion that is the *sine qua non* of relief on appeal. (Ibid.) Our review of the court's careful inquiry at the hearing on Mendez's Marsden motion satisfies us that the requisite showing of an abuse of discretion is lacking.

(Doc. 15, Ex. A).

>> 2. Federal Standard.

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that appellate counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the appeal. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan,

550 U.S. 465, 473 (2007); Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. at 1420. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Here, the state court identified the appropriate federal standard by applying Strickland. Thus, the only issue is whether the state court's adjudication, i.e., that defense counsel's representation was neither deficient nor prejudicial, was not contrary to or an unreasonable application of Strickland. For the reasons discussed below, the Court concludes that it was not.[2]

3. Analysis.

The petition cites the following four reasons why trial counsel was ineffective (and, thus, why denial of the Marsden motion was erroneous): (1) Officer Juarez "lied" when he testified at trial that the prison was on a "normal program;" (2) failure to call Inmate Hervey, who allegedly was on the telephone and observed the altercation at the time it happened; (3) failure to present Inmates Delgado and Lopez, who also witnessed the fight; and (4) failure to move to sever the trial of Petitioner and his co-defendant. (Doc. 2, pp. 6-10).

a. Juarez

Petitioner's complaint regarding Juarez's purported "lie" about whether the prison was on lockdown or not at the time the incident occurred is part of Petitioner's wider contention that Juarez, and, implicitly, the California Department of Corrections and Rehabilitation ("CDCR"), together

---

[2] Although Petitioner framed the issue in the state court as whether the trial court improperly denied his Marsden motion to replace counsel, the Court agrees with Respondent that the ineffective assistance of counsel claim that is the focus of the instant petition is an "intrinsic part" of the Marsden issue. (Doc. 15, p. 16). Put another way, had the state courts concluded that trial counsel was ineffective, there is little doubt that the Marsden motion would have been granted by the trial court or, once denied, would have been reversed by the appellate courts. For that reason, the Court agrees with Respondent that the issue can be reviewed simply as a claim of ineffective assistance of trial counsel.

engaged in a concerted effort to cover-up Juarez's involvement in the death of the victim and lay the blame on Petitioner and his co-defendant. Petitioner contends that, in addition to lying about the prison lockdown, he also lied about whether other individuals were present during the altercation and whether he picked up the spent cartridge he had fired during the altercation and taken it home without notifying the investigators. Petitioner also contends that a tape recording of inmate Hervey's phone conversation would support these allegations.

Apparently, Petitioner believes that, had the jurors heard this evidence, they would have concluded that Juarez was a liar, that his testimony was not credible, and that Juarez, not Petitioner, was responsible for the victim's death. The Court does not agree.

First, trial counsel indicated that the telephone recording clearly shows that the Petitioner, Perez, and the victim were not intentionally let out of their cells at the same time in order to permit some kind of altercation to occur. Counsel stated that in the recording the voice of a prison guard could be heard asking why the three individuals were outside of their cells, suggesting that this had not been planned. At the end of the altercation, barking sounds could be heard. Eyewitnesses stated that, after the victim had been beaten, Petitioner and Perez got on the ground and made barking sounds, apparently a behavior alluding to their gang's name, i.e., the Bulldogs. Defense counsel indicated that permitting the jury to hear the "barking" noises would, in her judgment, have been "highly prejudicial." Counsel also indicated that she had made a tactical decision not to get involved in the "politics" of the adversarial relationship between the Bulldogs and their enemy gang, the Southerners, who, she indicated, felt duty-bound to attack each other at every opportunity.

"A disagreement with counsel's tactical decisions does not provide the basis for declaring that the representation was constitutionally deficient." Raley v. Ylst, 470 F.3d 792, 799 (9th Cir.2006) (citing United States v. Mayo, 646 F.2d 369, 375 (9th Cir.1981)). Indeed, informed strategic choices are "virtually unchallengeable." Strickland, 466 U.S. at 689-690, 104 S.Ct. 2052 (reasonable tactical decision by counsel with which the defendant disagrees cannot form the basis of an ineffective assistance of counsel claim). The habeas court does not consider whether another lawyer with the benefit of hindsight would have acted differently than trial counsel. Id. Instead, the court considers

whether counsel made errors so serious that counsel failed to function as guaranteed by the Sixth Amendment. Id. at 687. Tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available, Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir.), cert. denied, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984), or because the tactic did not succeed. Here, both state courts found counsel's tactics to be reasonable. Giving due AEDPA deference to those decisions, this Court will not attempt to second-guess counsel's strategy with the advantage of eight years' worth of hindsight.

With regard to Juarez, although it is remotely possible that the defense might have been able to present a colorable defense based upon the theory of a conspiracy between Juarez and the CDCR, the record simply does not support the allegations underlying such a claim. At best, Petitioner has pointed to some evidence that, on the surface, would appear to contradict some of the prosecution's evidence. This Court, however, is not a fact-finder; it is a habeas court bound by the standards set forth in the AEDPA. The facts were found in the state court, and nothing in Petitioner's petition or Traverse provides a legal basis for this Court to disregard those findings and make new findings more favorable to Petitioner. Federal habeas proceedings are not intended to provide state inmates with a second bite at the apple.

Accordingly, Petitioner has failed to establish either that counsel's tactical decisions constituted defective representation or that, had counsel not made those tactical decisions, the trial's outcome would have been more favorable to Petitioner. To the contrary, given the lack of evidentiary support for Petitioner's rather outlandish allegations, it is altogether likely that counsel's decision to forego such a defense was prudent "damage control" and prevented the jury from being even more hostile to Petitioner than that already were.

### b. Inmate Witnesses

Petitioner also contends that, had he been able to call three other purportedly percipient witnesses, they would have supported his position that the altercation was a "one-on-one" between the victim and the co-defendant, Perez, and that Petitioner was not involved. Again, the Court does not agree.

During the Marsden hearing, the trial court heard from defense counsel, Ms. Tarter, about her tactical reasons for not calling as witnesses any of the three inmates whom Petitioner now contends should have been called. The state court's decision emphasized defense counsel's explanation that she did not call Hervey as a witness because he had intentionally turned his back on the altercation and did not want to witness it. She did not call Delgado and Lopez because the various statements they had given were inconsistent and tended to undermine their perception by reasonable jurors as having accurately and objectively witnessed the events that transpired. Similarly, trial counsel explained that she had interviewed all inmates who had agreed to be interviewed, but each had information that, presumably on cross-examination, would have been "detrimental" to Petitioner's defense.

The trial court found the claim that counsel had failed to investigate the witnesses to be "clearly not true." The trial court also found counsel's reasons for not calling the various witnesses to be "reasonable." By concluding that the trial court had not abused its discretion in denying the Marsden motion, the 5th DCA effectively agreed with the trial court that defense counsel had articulated reasonable tactical bases for failing to call the witnesses Petitioner contends should have been called by competent defense counsel. Given the foregoing, and considering the AEDPA deference this Court is required to accord the state courts, the Court is not in a position to second-guess trial counsel's tactical decisions. In sum, the Court concludes that Petitioner has failed to establish either prong of Strickland: he has failed to show that counsel's performance in not calling certain inmate witnesses to be deficient, and he has failed to show that, had counsel actually called those witnesses, that their testimony would have likely produced a different, and more favorable, outcome.

### c. Failure to Move For Severance

"Whether to seek severance of defendants ... is within the wide range of tactical decisions entrusted to trial counsel." Johnson v. McGrath, No. CV 03–8844–DDP, 2006 WL 2331006, at *15 n. 18 (C.D.Cal. Aug.2, 2006) (citing Ryan v. Clarke, 281 F.Supp.2d 1008, 1082 (D.Neb.2003)). "It does not matter whether trial counsel made the best choice possible. The question is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied

on as having produced a just result.'" Sullivan v. Schriro, No. CIV–04–1517–PHX–DGC(GEE), 2005 U.S. Dist. LEXIS 26339, at (D.Ariz. Aug. 15, 2005) (quoting Strickland, 466 U.S. at 686, 104 S.Ct. 2052).

As Respondent correctly points out, the state courts did not expressly address this facet of Petitioner's ineffective assistance claim; however, it is equally clear that the state court rejected the claim on its merits. When a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, — U.S.—, 133 S.Ct. 1088, 1091, 185 L.Ed.2d 105 (2013). Moreover, where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003); Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir.2002) (holding that when there is an adjudication on the merits but no reason for the decision, the court must review the complete record to determine whether resolution of the case constitutes an unreasonable application of clearly established federal law); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law."). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S.Ct. at 784.

Here, based upon the Court's independent review of Petitioner's claim regarding defense counsel's failure to move for a severance, the Court concludes that claim should have been rejected. Petitioner's contention is premised on the assumption that his co-defendant, Perez, was willing to

14

testify at trial on behalf of Petitioner and against his own interest and the advice of his own trial attorney, i.e., presumably to tell the jury that Perez, and Perez alone, engaged in the fight with the victim. (LD 7, pp. 28-29). Petitioner presents a declaration from Perez, dated September 9, 2008, almost two years after the trial, to that effect. (LD 2, p. 84; LD 3, p. 201).

That chronology of events, however, is not persuasive. There is nothing in the Perez declaration to establish that, <u>at the time of trial</u>, Perez was willing to go against the advice of his trial counsel and testify against his own interests and in favor of Petitioner. The Court now has only Petitioner's self-serving contention that this is true. (Doc. 23, p. 6). Moreover, Perez, like Petitioner, was a prison inmate confined for committing a felony and charged with committing yet another felony. Both were members of a prison gang that was literally at war with a rival prison gang to which the victim belonged. As such, Perez's credibility as a witness was highly questionable and it seems doubtful that reasonable jurors would have found Perez's version of the altercation to be more believable than the account of prison employees. Considering that both Perez and Petitioner were fellow members of the same prison gang and had admitted enmity toward the victim and his fellow gang members, and given defense counsel's own concern about getting into the "politics" of prison gangs and their conduct, it is difficult to see how anything Perez might have testified to could be viewed, with the hindsight of eight years, as being so exculpatory in 2006 that the outcome of that trial most likely would have been more favorable to Petitioner had he testified. In short, Petitioner has not shown that counsel's failure to move to sever defendants constituted deficient performance or that counsel's decision was prejudicial.[3]

B. <u>Opportunity to Present A Defense.</u>

In a related argument, Petitioner contends that, because of trial counsel's ineffectiveness, Petitioner was effectively precluded from presenting an adequate defense. This contention is also without merit.

---

[3] In so ruling, the Court is not, as Petitioner has cautioned in his Traverse, "supply[ing] reasons" for trial counsel's failure to move to sever. (Doc. 23, p. 6). Rather, the Court, in applying <u>Strickland</u>, has independently reviewed the record to determine whether both prongs of <u>Strickland</u> have been met. A review of the record readily discloses each of the points discussed above supporting the Court's conclusion that neither prong of <u>Strickland</u> has been met.

1. The 5th DCA's Opinion.

The state appellate court did not expressly address this issue in its second decision; however, as Respondent correctly notes, the 5th DCA's decision vis-à-vis the Marsden issue necessarily forecloses any suggestion that Petitioner was denied the right to present a defense.

2. Federal Standard.

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense" and the right to present relevant evidence in their own defense. Holmes v. South Carolina, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)). This right is not unlimited, but rather is subject to reasonable restrictions. United States v. Scheffer, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998); Taylor v. Illinois, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (An accused does not have an "unfettered right" to present any evidence he or she wishes); Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir.2003).

3. Analysis.

As with the severance issue, the state court did not expressly address this issue in its decision rejecting Petitioner's claims. Thus, the Court independently reviews the claim. In so doing, it is apparent that the claim is without merit.

In the petition, Petitioner bases his claim that he was denied the chance to present a defense entirely upon trial counsel's ineffectiveness. (Doc. 2, p. 10). Respondent's response is, therefore, that Petitioner was not deprived of the right to present a defense unless trial counsel was ineffective under Strickland. Since she was not ineffective, then, *ipso facto*, Petitioner was not denied his constitutional right to present a defense. The Court basically agrees with this logic and rejects Petitioner's contention.

As mentioned, Strickland requires both a showing of defective performance and prejudice. In the previous section, both defective performance and prejudice were rejected. Given that, it is difficult to see how a claim of failure to allow Petitioner to present a defense, which in turn is based entirely

16

upon trial counsel's purported ineffectiveness, can possibly survive, either legally or logically, as an independent claim.  Since the Court has concluded that counsel was not ineffective and that no prejudice inured to Petitioner by virtue of her representation, the Court finds no basis on which to conclude that counsel's defective representation precluded Petitioner from presenting a defense.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 2), be DENIED.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 19, 2014**                        **/s/ Jennifer L. Thurston**
                                          UNITED STATES MAGISTRATE JUDGE

17